UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR RUIZ, <br><br>   Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of the <br> Social Security Administration, <br><br>   Defendant. | Case No. ED CV 09-1988 PJW <br><br> MEMORANDUM OPINION AND ORDER |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI"). Plaintiff contends that the ALJ erred when he: 1) rejected the treating psychiatrist's opinion; 2) concluded that Plaintiff's bipolar disorder was not a severe impairment; and 3) failed to call a vocational expert. For the following reasons, the Court concludes that the ALJ did not err and the Agency's decision is affirmed.

II. BACKGROUND

Plaintiff applied for SSI on August 22, 2007, alleging that he had been unable to work since August 15, 2007, due to depression and anxiety. (Administrative Record ("AR") 84-86.) The Agency denied the

application initially and on reconsideration. (AR 52-59, 62-67.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 69-71.) On May 1, 2009, Plaintiff appeared with counsel at the hearing and testified. (AR 29-51.) On July 23, 2009, the ALJ issued a decision denying benefits. (AR 5-17.) Plaintiff appealed the ALJ's decision, but the Appeals Council denied review. (AR 1-4.) He then commenced this action.

### III. ANALYSIS

#### A. The Treating Psychiatrist's Opinion

In his first claim of error, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of his treating psychiatrist who opined that Plaintiff was severely limited in his ability to perform work-related functions. (Joint Stip. at 3-6.) For the following reasons, the Court concludes that this claim is without merit.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Thus, a treating physician's opinion that is well-supported and not inconsistent with the other substantial evidence in the record will be given controlling weight. *Id.* In order to reject a treating physician's opinion, an ALJ must set forth specific and legitimate reasons for doing so. *Id.* at 631-32.

Psychiatrist Kari Enge treated Plaintiff from September 2007 through March 2009. (AR 167, 198-211.) This treatment consisted of 30-minute therapy sessions about every two months, as well as medications to treat Plaintiff's psychiatric ailments. (AR 167, 198-211.) On June 20, 2008, Dr. Enge completed a check-the-box form, which contained her opinion regarding how Plaintiff's condition

impacted his ability to work. (AR 198-99.) The sum and substance of this opinion was that Plaintiff was unable to work.[1] (AR 198-99.) The ALJ rejected Dr. Enge's opinion, concluding:

> The claimant's treatment records offer not the slightest support for the exaggerations noted in the work-related activities form dated June 26, 2008 that was solicited by the claimant's representative [AR 198-99]. I find the opinion expressed on this form has no probative value. The opinion is exaggerated, accommodative, and indulgent and completely inconsistent with the claimant's treatment records.

(AR 15.)

Plaintiff argues that the ALJ's explanation for rejecting Dr. Enge's opinion was not specific or legitimate. (Joint Stip. at 5.) He contends that it is simply a conclusion and cannot pass muster under governing social security law, including *Embrey v. Bowen*, 849

---

[1] Dr. Enge concluded that Plaintiff was "seriously limited, but not precluded" from performing nearly every listed work-related activity, including understanding and carrying out very short and simple instructions, as well as detailed instructions; maintaining attention; maintaining regular attendance; making simple work-related decisions; performing at a consistent pace; asking simple questions or requesting assistance; responding appropriately to supervisors and to changes in a routine work setting; interacting with the general public; and adhering to basic standards of neatness and cleanliness. (AR 198, 199.) Dr. Enge also found that Plaintiff would be "unable to meet competitive standards" in remembering work-like procedures; working with others without becoming distracted; completing a normal workday and workweek without interruption; getting along with coworkers without distracting them; dealing with normal work stress; setting goals or making plans independently of others; maintaining socially appropriate behavior; and traveling in an unfamiliar place. (AR 198-99.) Dr. Enge added that Plaintiff would be absent from work due to illness or treatment more than four days a month. (AR 199.)

1  F.2d 418, 421-22 (9th Cir. 1988). For the following reasons, the
2  Court disagrees.
3   In *Embrey*, the ALJ rejected the treating doctor's opinion because
4  it was, allegedly, not supported by sufficient objective findings and
5  was contrary to the "preponderant conclusions mandated by the
6  objective findings." *Id.* at 421. The Ninth Circuit found that this
7  was an insufficient justification for rejecting the opinion and held
8  that the ALJ had to do more than simply conclude that the treating
9  doctor was wrong, but had to explain why the ALJ's interpretation of
10 the evidence, rather than the doctor's, was correct. *Id.* at 422.
11  The ALJ did do so here. He set forth in detail Plaintiff's
12 treatment at the county clinic where Dr. Enge worked and explained why
13 her ultimate determination that Plaintiff was disabled was
14 inconsistent with her treatment notes. (AR 14-15.) For example, he
15 noted that Plaintiff's treatment was conservative, routine, sporadic,
16 and infrequent, that Dr. Enge described Plaintiff as doing "OK," and
17 that she maintained him on the same medication and the same dosage
18 throughout the treatment period. (AR 12, 14-15.) These findings are
19 supported by the record. (AR 167, 201-11.) Plaintiff was rarely seen
20 by Dr. Enge. At times, months went by during which Plaintiff was not
21 seen by Dr. Enge at all, or by anyone else at the clinic. (AR 201-
22 09.) It appears that Dr. Enge's treatment consisted primarily of
23 medication, which seems to have controlled Plaintiff's depression and
24 anxiety. She also noted that Plaintiff was working on his GED and
25 later that he was going to college. (AR 201-02, 207.)
26  These observations by Dr. Enge and her corresponding treatment
27 are inconsistent with her opinion that Plaintiff was totally disabled
28

and unable to work. The ALJ's rejection of Dr. Enge's opinion on that ground, therefore, was not in error.

Contrary to Plaintiff's contentions, this is not a case where the ALJ summarily concluded that the treating doctor's opinion was not supported by the objective medical evidence. (Joint Stip. at 4-6.) Rather, it is a case where the ALJ carefully compared the treating doctor's opinion and the treating doctor's chart notes and concluded that they were inconsistent. As a result, the ALJ determined that the treating doctor's opinion was not entitled to great weight. This, the ALJ was allowed to do. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of treating doctor's opinion that claimant was disabled where doctor's notes showed claimant was improving and doctor's examination indicated claimant was not disabled); *see also Orn*, 495 F.3d at 631-32 (holding that treating doctor's opinion that is not well-supported and is inconsistent with other substantial evidence need not be given controlling weight). For these reasons, this claim does not merit remand.[2]

---

[2] The records of Plaintiff's mental health treatment before August 2007 do not support Dr. Enge's opinion either. In April 2006, neurologist Kenneth Jordan found that Plaintiff was fully alert, attentive, and cooperative, and that his affect was appropriate, though his speech was low and monotonous. (AR 159.) Dr. Jordan determined that Plaintiff's intellectual function, cognitive skills, and short-term memory were normal. (AR 159.) He made a "differential diagnosis of major depression, schizoaffective disorder with schizophrenia possible but, in this examiner's opinion, less likely." (AR 160.) He recommended that an EEG and MRI scan be conducted. (AR 161.) An April 10, 2006 EEG showed no abnormalities and normal sleep patterns. (AR 157.)

On March 30, 2007, Dr. John Kohut saw Plaintiff for a psychiatric evaluation, diagnosing psychotic disorder, not otherwise specified. (AR 163.) Plaintiff was referred for psychotherapy but, after he failed to keep appointments, his care was terminated and he was not prescribed psychotropic medication. (AR 163.)

B. <u>Plaintiff's Mental Impairment</u>

In his second claim of error, Plaintiff contends that the ALJ erred when he failed to conclude at step two that Plaintiff's bipolar disorder was a severe impairment. (Joint Stip. at 10-12.) Plaintiff argues that his bipolar disorder pre-existed his substance abuse and, therefore, the ALJ should have considered it. (Joint Stip. at 11.) For the following reasons, the Court concludes that any error was harmless.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 416.921(a). The governing regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). The step-two inquiry is intended to be a "de minimis screening device." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

In August 2007, psychiatrist Imelda Alfonso, who worked at the same clinic as Dr. Enge, evaluated Plaintiff and diagnosed him with bipolar disorder. (AR 170.) Thereafter, apparently, Dr. Enge was assigned to treat Plaintiff.

The ALJ found at step two that Plaintiff's severe impairments were polysubstance abuse and substance-induced mood disorder. (AR 10.) He then determined that, as a result of these impairments, Plaintiff would be limited to unskilled, entry-level work. (AR 11.) Plaintiff argues that the ALJ should have also concluded that Plaintiff's bipolar disorder was a severe impairment based on Dr.

6

Alfonso's diagnosis. Even assuming that Plaintiff is right, however, and the ALJ should have included bipolar disorder as a severe impairment at step two, Plaintiff has not shown how the ALJ's failure to do so had any effect on the outcome of this case, nor has the Court been able to discover any on its own. Whether termed anxiety, depression, or bipolar disorder, the outward manifestations of Plaintiff's psychiatric ailments were the same; he had difficulty coping with the stress of everyday life and was withdrawn and, at times, combative. Dr. Alfonso prescribed medication to treat his condition, which Dr. Enge continued, and Plaintiff's symptoms were resolved. (AR 168, 170, 201-11.) The ALJ relied on this fact when he concluded that Plaintiff could work. Thus, any error on the ALJ's part by not listing bipolar disorder as a severe impairment at step two was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that, in the Social Security context, an error is harmless if it is "inconsequential to the ultimate nondisability determination."); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that error in finding an impairment non-severe at step two was harmless when ALJ accounted for resulting limitations later in sequential evaluation process) (citing *Stout*, 454 F.3d at 1054-55).

Plaintiff argues that the ALJ's error was "significant" because the fact that Plaintiff suffers from bipolar disorder demonstrates that his symptoms exist independently from his substance abuse and that his addiction was not a contributing factor to his disability. (Joint Stip. at 14.) This argument is misplaced. Plaintiff's bipolar disorder would only be relevant if the ALJ had found that Plaintiff was disabled. *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th

Cir. 2001) (noting, *if* claimant is found to be disabled and there is medical evidence of drug addiction or alcoholism, the Agency must determine whether the addiction or alcoholism is a contributing factor material to the disability determination) (quoting 20 C.F.R. § 416.935(a)) (emphasis added). Here, the ALJ found that Plaintiff was not disabled, even with drug use. (AR 16-17.) Thus, it was immaterial whether Plaintiff had a severe mental impairment apart from substance abuse because it would not have affected the outcome of this case. As such, this claim does not merit remand or reversal.

  C. <u>The ALJ's Use of the Grids</u>

  In his third claim of error, Plaintiff contends that the ALJ erred by consulting the Grids to determine whether Plaintiff could perform work existing in the national economy instead of a vocational expert. (Joint Stip. at 14-16.) For the following reasons, this claim is rejected.

  At step five, the burden shifts to the Agency to establish that, although a claimant cannot perform his past relevant work, he can perform jobs that exist in significant numbers in the local and national economies. 20 C.F.R. §§ 416.960(b)-(c). This burden can be met through the use of a vocational expert or through the application of the Grids found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00, *et seq.*; *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

  Here, the ALJ noted that Plaintiff's ability to work had been "compromised" by nonexertional limitations, which restricted him to entry-level, unskilled work, but found that these limitations had only a minimal effect on the occupational base of unskilled work. (AR 16.)

The ALJ concluded that, under Grid Rule 204.00, there were numerous jobs in the national economy that Plaintiff could perform. (AR 16.)

An ALJ is entitled to rely on the Grids where they "*completely and accurately* represent a claimant's limitations . . . . In other words, a claimant must be able to perform the *full range* of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original).

Plaintiff argues that, whenever a claimant suffers from non-exertional limitations, the ALJ is required to call a vocational expert, citing *Tackett*, 180 F.3d at 1102. Plaintiff is mistaken. The Ninth Circuit has made clear that a step-two determination that a non-exertional impairment is severe does not require that an ALJ seek the assistance of a vocational expert at step five unless the impairment results in significant and severe limitations. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Where a claimant is no more than moderately limited in his ability to perform work-related activities, the ALJ is not required to enlist the services of a vocational expert and can rely, instead, on the Grids. *Id.* at 1077.

Here, as in *Hoopai*, the ALJ found at step two that Plaintiff was no more than moderately limited in his ability to perform work-related functions. (AR 10.) That being the case, the ALJ was not required to consult a vocational expert. *Hoopai*, 499 F.3d at 1076-77.

## IV. CONCLUSION

The ALJ was called upon to determine whether Plaintiff was capable of working despite his mental impairments, which limited his ability to perform a full range of work. The ALJ decided that he could. Not only is this decision supported by the objective medical evidence in this record, it is also supported by Plaintiff's

9

1 | testimony. He, too, believes that if he takes his medication he is
2 | capable of working. (AR 39.) The ALJ did not err when he discounted
3 | the treating psychiatrist's opinion that Plaintiff could not work
4 | because that opinion was not supported by the doctor's own notes. Nor
5 | did the ALJ err when he failed to include Plaintiff's bipolar disorder
6 | as a severe impairment at step two since the ALJ did consider all of
7 | the symptoms of Plaintiff's psychiatric impairments and correctly
8 | concluded that they did not prevent him from working. For these
9 | reasons, the Agency's decision is affirmed and the case is dismissed
10 | with prejudice.
11 |     IT IS SO ORDERED.
12 |     DATED: September 15, 2010.

                    /s/ Patrick J. Walsh
                    PATRICK J. WALSH
                    UNITED STATES MAGISTRATE JUDGE

28 | S:\PJW\Cases-Soc Sec\RUIZ\Memo_Opinion.wpd